IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

MICHAEL SYKORA,                    )
                                   )
                Plaintiff,         )          8:08CV309
                                   )
        v.                         )
                                   )
DOUGLAS COUNTY, NEBRASKA,          )          MEMORANDUM OPINION
                                   )
                Defendant.         )
_____)


        This matter is before the Court on defendant Douglas

County's motion for summary judgment (Filing No. 25) on plaintiff

Michael Sykora's claim for relief under the Emergency Medical

Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

Sykora's amended complaint asserts Douglas County is liable to

Sykora for the alleged EMTALA violation and for a pendant state-

law negligence claim (*See generally* Amended Complaint, Filing No.

12).  After reviewing the parties' briefs and evidentiary

submissions, the Court will grant summary judgment in favor of

Douglas County on Sykora's EMTALA claim and will dismiss Sykora's

pendant state-law claims without prejudice.

## I.  FACTS

        The facts are generally not disputed in this case.

Douglas County operates the Douglas County Health Center

("DCHC"), which contains a dental clinic that at all times

relevant to this action employed Gary A. Epstein, DDS, and Cindy

Drake, DDS.  Sykora visited DCHC's dental clinic on or around

July 18, 2006, complaining of pain in his right jaw and sensitivity to hot and cold temperatures.  Dr. Drake examined Sykora and diagnosed Sykora as suffering from a distal crack in a rear molar ("Tooth 31").  Dr. Drake did not perceive Sykora as suffering from an emergency medical condition, did not discuss whether prescribing antibiotics to Sykora was appropriate, and did not order an X-ray of Tooth 31.[1]  Dr. Drake referred Sykora to the University of Nebraska Medical Center ("UNMC") to have Tooth 31 extracted.  Sykora learned he would have to wait four to six weeks for an appointment at UNMC to have Tooth 31 extracted.

Sykora returned to DCHC again on July 24, 2006, complaining of pain in his rear molar, hardening in his throat, and swelling in his neck.  Dr. Epstein examined Sykora and diagnosed Sykora as suffering from a distal crack in Tooth 31.  Dr. Epstein did not perceive Sykora as suffering from an emergency medical condition, did not discuss whether prescribing antibiotics to Sykora was appropriate, and did not order an X-ray of Tooth 31.  Dr. Epstein also referred Sykora to UNMC to have Tooth 31 extracted.

The pain in Sykora's jaw persisted, and Sykora subsequently visited a different dental clinic.  The new dental

---

[1] A genuine issue exists regarding whether or not Dr. Drake ordered an X-ray of Tooth 31, but for the purposes of this opinion, the Court views the evidence in a light most favorable to Sykora and assumes Dr. Drake did not order an X-ray.

clinic diagnosed Sykora as having an infection in his lower jaw, known as Ludwig Angina.  On July 27, 2006, the new dental clinic extracted Tooth 31 from Sykora's mouth and treated Sykora's Ludwig Angina infection.  Sykora brought this action on July 17, 2008.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson,* 477 U.S. at 248.  A material issue is genuine if it has any real basis in the record.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

On a motion for summary judgment, the Court must view all evidence and reasonable inferences in the light most favorable to the nonmoving party.  *Anderson,* 477 U.S. at 250. However, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts

sufficient to raise a genuine issue for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  If the plaintiff cannot support each essential element of his claim, summary judgment will be granted because a complete failure of proof regarding an essential element necessarily renders other facts immaterial. *Id.* at 322-23.

### III.  DISCUSSION

### A.   The Emergency Medical Treatment and Labor Act

Douglas County argues the Court should grant summary judgment in favor of Douglas County because Drs. Drake and Epstein provided Sykora with an appropriate medical screening under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.  Congress enacted EMTALA "to address a distinct and rather narrow problem -- the 'dumping' of uninsured, underinsured, or indigent patients by hospitals who did not want to treat them."  *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1136 (8th Cir. 1996) (en banc).  EMTALA provides in pertinent part:

> In the case of a hospital that has
> a hospital emergency department, if
> any individual . . . comes to the
> emergency department and a request
> is made on the individual's behalf
> for examination or treatment for a
> medical condition, the hospital
> must provide for an *appropriate
> medical screening examination*
> within the capability of the
> hospital's emergency department,

> including ancillary services
> routinely available to the
> emergency department, to determine
> whether or not an emergency medical
> condition . . . exists.

42 U.S.C. § 1395dd(a) (emphasis added).  "EMTALA is not a federal malpractice statute and it does not set a national emergency health care standard; claims of misdiagnosis or inadequate treatment are left to the state malpractice arena."  *Summers*, 91 F.3d at 1137.

The Eighth Circuit has determined four types of conduct constitute a non-appropriate medical screening examination that is actionable under EMTALA: (1) dumping a patient; (2) improper discriminatory screening of patients; (3) failure to screen patients at all; and (4) screening patients differently from others perceived to have identical conditions.  *Summers*, 91 F. 3d at 1139.  Sykora argues Douglas County's conduct implicates dumping, improper discriminatory screening, and screening patients differently from others perceived to have identical conditions.

## B.   Dumping

Sykora argues the referrals he received from Drs. Drake and Epstein to have Tooth 31 pulled from UNMC constitute a dumping under EMTALA.  Whether the referrals constitute a dumping is a question of law properly before the Court in a motion for summary judgment.  *See Aho v. Erie Mining Co.*, 466 F.2d 539, 541

(8th Cir. 1972) ("Normally, where the only conflict is as to what legal conclusions should be drawn from the undisputed facts, a summary judgment should be entered.") (internal quotation omitted).

"A patient is 'dumped' when he or she is shunted off by one hospital to another, the second one being, for example, a so-called 'charity institution.'"  *Summers*, 91 F.3d at 1136; *see also* Lawrence Bluestone, Note, *Straddling the Line of Medical Malpractice: Why There Should Be a Private Cause of Action Against Physicians via EMTALA*, 28 Cardozo L. Rev. 2829, 2833 (2007) (stating dumping occurs when a hospital refuses to provide emergency stabilization and screening services to patients for non-medical reasons).  An example of dumping is found in *Correa v. Hosp. San Francisco*, 69 F.3d 1184 (1st Cir. 1995), in which a patient went to an emergency room, but the emergency room refused to perform any form of screening to determine whether the patient had an emergency medical condition.

In Sykora's case, there are no specific facts in the record suggesting Douglas County or Drs. Drake and Epstein refused to screen Sykora for a non-medical reason and forced him to go to another hospital for treatment.  Rather the record discloses Drs. Drake and Epstein screened Sykora at DCHC's dental clinic and diagnosed Sykora as suffering from a distal crack in Tooth 31.  Accordingly, no genuine issue of fact exists regarding

whether Douglas County dumped Sykora, and the Court will enter judgment in favor of Douglas County on this issue.

## C.    Improper Discriminatory Screening

Sykora also argues Drs. Drake and Epstein's screening was improperly discriminatory, and thus a violation of EMTALA. Sykora does not set forth any specific facts on this issue sufficient to raise a genuine issue for trial.  Furthermore, Sykora argument fails to demonstrate Douglas County's conduct was discriminatory in any way.  Thus, Douglas County did not conduct an inappropriately discriminatory screening on Sykora, and the Court will enter summary judgment in favor of Douglas County on this issue.

## D.    Screening Patients Differently from Others Perceived to Have Identical Conditions

Finally, Sykora argues Drs. Drake and Epstein screened Sykora differently from other patients who are perceived to have the same condition.  Put succinctly, Sykora argues that Drs. Drake and Epstein stated their standard procedure is to order an X-ray for persons claiming symptoms similar to the symptoms Sykora exhibited, that they did not order an X-ray for Sykora, and thus Drs. Drake and Epstein screened Sykora differently from others perceived to have identical conditions.  While Sykora's argument is facially attractive, a review of relevant case law shows this argument has no merit.

In *Summers v. Baptist Medical Center Arkadelphia*, 91
F.3d 1132 (8th Cir. 1996), the Court of Appeals for the Eighth
Circuit decided a case very similar to Sykora's situation.  In
*Summers*, Harold Summers went to the hospital complaining of chest
pains and snapping and popping sounds in his chest.  *Summers*, 91
F.3d at 1135.  The hospital acknowledged patients exhibiting
these symptoms would routinely be given a chest x-ray, but the
hospital did not perform an X-ray on Summers.[2]  *Id.* at 1138.  The
hospital's doctors determined Summers need not be admitted to the
hospital and discharged Summers after giving him pain injections.
*Id.* at 1135.  Two days later, Summers went to another hospital
which discovered his injuries were more severe than initially
diagnosed.  *Id.* at 1135-36.  Summers then sued the first hospital
under EMTALA.

The Eighth Circuit determined Summers was not eligible
for relief under EMTALA and stated his claims were instead
governed by state negligence or medical malpractice law.  *Id.* at
1139.  In addressing Summers' argument that the hospital's
standard practice was to administer chest X-rays and the hospital
had failed to administer a chest X-ray to Summers, the court
determined this failure did not constitute an inappropriate

---

[2] The Court in *Summers* assumed for the purposes of deciding
the summary judgment motion that the hospital had not performed
an X-ray on Summers, similar to this Court's assumption that Drs.
Drake and Epstein did not order an X-ray for Sykora.

medical screening under EMTALA.   In refuting Summers' argument,

the court quoted *Vickers v. Nash General Hospital*, 78 F.3d 139,

144 (4th Cir. 1996), which stated:

> EMTALA is implicated only when
> individuals who are *perceived* to
> have the same medical condition
> receive disparate treatment; it is
> not implicated whenever individuals
> who turn out in fact to have had
> the same condition receive
> disparate treatment.  The Act would
> otherwise become indistinguishable
> from state malpractice law. As a
> result, when an exercise in medical
> judgment produces a given
> diagnosis, the decision to
> prescribe a treatment responding to
> the diagnosis cannot form the basis
> of an EMTALA claim of inappropriate
> screening.

*Summers*, 91 F.3d at 1139 (emphasis in the original).   The court

in *Summers* determined the hospital had not screened Summers

differently from other patients perceived to have the same

condition. *Id.*   Thus, although arguably in violation of state

malpractice law, the hospital had given Summers an appropriate

medical screening and was not liable to Summers under EMTALA.

*Id.; accord Hunt v. Lincoln County Mem. Hosp.*, 317 F.3d 891, 894

(8th Cir. 2003) ("The emergency-room physician is required by

EMTALA to screen and treat the patient for those conditions the

physician perceives the patient to have. . . . While Hunt may or

may not have a state law medical malpractice claim, he does not

have a valid federal EMTALA . . . .") (quoting *Summers*, 91 F.3d

at 1139) (internal quotation omitted).

In light of *Summers*, it is clear Sykora cannot sustain

his EMTALA claim against Douglas County.  As in *Summers*, Drs.

Drake and Epstein's conduct was arguable negligent and may give

rise to a claim for negligence or medical malpractice under state

law.  However, a physician's negligence clearly cannot sustain an

EMTALA claim.  Accordingly, the Court will enter summary judgment

in favor of Douglas County on whether Dr. Drake and Epstein's

conduct on Douglas County's behalf violated EMTALA.[3]

## IV.  CONCLUSION

In sum, Douglas County conducted an appropriate medical

screening of Sykora and is not liable to Sykora under EMTALA.

The Court will enter summary judgment in favor of Douglas County

on the EMTALA issue.  As a result of this, the only remaining

issue before the Court is whether Douglas County is liable to

Sykora for negligence or medical malpractice, which are state-law

claims.

---

[3] Sykora argues the Court should follow the holding in
*Correa v. Hospital San Francisco*, 69 F.3d 1184 (1st Cir. 1995).
Notwithstanding that *Correa* is non-binding precedent on the
Court, the facts in *Correa* are readily distinguishable and the
First Circuit's holding in *Correa* is not as broad as Sykora
argues.  *See Reynolds v. Maine Gen. Hosp.*, 218 F.3d 78, 84 (1st
Cir. 2000).

When Sykora originally brought this action against Douglas County, the Court had jurisdiction over Sykora's pendant state law claims under the doctrine of supplemental jurisdiction. *See* 28 U.S.C. § 1367.  Courts have discretion regarding whether to exercise supplemental jurisdiction and may decline to exercise supplemental jurisdiction over a state law claim if all claims over which the court had original jurisdiction have been dismissed.  § 1367(c)(3).  Since Sykora's EMTALA claim was the only claim over which the Court had original jurisdiction, and that claim has been dismissed, the Court has discretion to decline to exercise supplemental jurisdiction over Sykora's remaining claims.  The Court declines to maintain supplemental jurisdiction over Sykora's state law claims, and thus, Sykora's state law claims against Douglas County will be dismissed without prejudice.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 25th day of November, 2009.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court